## JONES. *v.* JONES *et ux.*

(*Supreme Court, General Term, First Department.* February 18, 1892.)

1. MORTGAGES—DEED ABSOLUTE ON ITS FACE—EVIDENCE.
   On the question whether a deed absolute, executed by a decedent in his life-time, was intended as a mortgage, the court properly excluded evidence of conversations of the grantor with a third person, had after the execution of the deed, tending to show its intent.

2. DEED OF GIFT—MENTAL CAPACITY OF GRANTOR—DISPOSING MIND.
   In an action attacking a deed of gift for want of mental capacity in the grantor, the court properly instructed the jury that it was only necessary that the grantor should have had a disposing mind at the time of its execution,—that is, mental capacity to comprehend the nature and quality of his act, the nature and extent of his property, and of the claims of the grantees on his bounty; and that the question was not whether the grantor was sane or insane at the time of the execution of the deed.

3. WILLS—TESTAMENTARY CAPACITY—BURDEN OF PROOF.
   Though it is incumbent on the proponent of a will to show testamentary capacity in the testator, yet, if probate of the will be resisted for want of testamentary capacity, the burden rests on the contestant to show that fact. *Delafield* v. *Parish,* 25 N. Y. 1, followed.

Appeal from circuit court, New York county.

Ejectment by Evan Jones against Morgan Jones and Ann, his wife. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and LAWRENCE and O'BRIEN, JJ.

*Parsons, Shepard & Ogden,* (*John E. Parsons,* of counsel,) for appellant. *Jacob F. Miller,* (*Joseph H. Choate,* of counsel,) for respondents.

LAWRENCE, J. This is an action of ejectment, plaintiff claiming that he is seised in fee and entitled to the possession of an undivided one-third part in certain premises, particularly described in the complaint. The property consisted of several distinct parcels, each parcel being particularly described in a separate paragraph of the complaint; but by an order entered before the trial of the action the parcels of land described in the first, second, and third paragraphs were withdrawn. The plaintiff claims as heir at law of John Jones, who died on the 16th day of June, 1883, leaving no direct descendants, but leaving two brothers, the parties to this action, and the children of a deceased brother, as his only heirs at law; and the plaintiff claims, as one of such heirs at law, to be seised in fee and entitled to the possession of an undivided one-third part of the property mentioned in the complaint as amended. John Jones, in whom the title was vested, executed certain deeds in August,

1879, to the defendant Morgan Jones, in and by which he conveyed all his right, title, and interest to the property in question to the defendant Morgan Jones; and Ann Jones, the wife of Morgan Jones, has by certain mesne conveyances become possessed of the title thereto. John Jones also, on the 17th of April, 1882, executed a will, in and by which he gave and bequeathed to his brother, Morgan Jones, all the real and personal estate that he might be seised of at the time of his death, after paying his debts and funeral expenses. The theory of the plaintiff is that both the deeds and the will under which the defendants claim title are invalid and of no effect, because John Jones, at the time of making the same, was either the subject of undue influence, or lacked the mental capacity to execute either of the instruments in question. The learned justice who tried the case at circuit instructed the jury that their form of verdict, if for the defendant, should be, "No cause of action," and also submitted to them a special question in addition to their general verdict, which he directed them to answer "Yes," or "No;" that question being: "In August, 1879, did John Jones have mental capacity to execute the deed to Morgan Jones?" The jury rendered a verdict for the defendant, "No cause of action," and as to the special question, submitted by the court, they answered, "Yes." The case comes before us on exceptions taken to the refusal of the justice to charge certain requests submitted to him by the plaintiff, and also on exceptions to various portions of the judge's charge; and it may be stated generally that the questions raised by those exceptions are as to the burden of proof, and as to whether the judge was correct in the rule which he laid down to the jury as to the degree of mental capacity necessary to be possessed by a testator in making a disposition of his property by will. The plaintiff also claims that the learned justice took from the jury all questions of fraud and undue influence, and left it to the jury to determine only the question of mental capacity; and, further, that the court erred in refusing to submit to the jury the question whether the deeds were not intended merely as security, and not as absolute conveyances of the fee. With respect to the exception last stated, we deem it sufficient to say that the evidence of Shiels in respect to his conversation with John Jones, as to the transaction with Morgan, relates to a declaration made after the conveyances had been executed and delivered, and it was not competent to go to the jury upon the question whether conveyances absolute upon their face were really intended as mortgages. Besides, the evidence itself shows that the witness understood John Jones in making the declaration to mean that he had secured Morgan against loss, by selling, deeding, or conveying to him his property. We think the learned justice was correct in his charge to the jury in respect to the mental capacity which it was necessary for John Jones to have possessed in August, 1879, to make good and valid conveyances of the premises in question. The learned justice said upon that subject: "Did John Jones, in August, 1879, have a disposing mind? That is a vague expression. It means this: Did he have mental capacity to comprehend the nature and quality of his act, to comprehend the nature and extent of the claims upon his bounty, both those of Morgan Jones and of his other relatives? Mark that definition, for it is of the first importance in this case, and I will repeat it to you: John Jones had a disposing mind, as it is called in the law, if he had mental capacity to comprehend the nature and quality of his act, to comprehend the nature and extent of his property, and to comprehend the nature and extent of the claims to his bounty, both those of Morgan Jones and his other relatives. You will remember that I do not submit to you the question whether John Jones was sane or insane. That is utterly immaterial to you here, except as it bears upon the question of whether he had a disposing mind, within the definition I have given you." This question the jury answered in the affirmative.

In *Jackson* v. *King*, 4 Cow. 207, it was held that a voluntary deed is good as against the grantor's heir; and that, where an act is sought to be avoided

on the ground of mental disability, the proof lies with him who alleges it; that, until the contrary appears, sanity is to be presumed, but that, after a general derangement is shown, it then is incumbent upon the one who insists that the act is valid to show sanity at the very time when it was performed. Tested by this rule, with the evidence in the case before us, we think the jury may well have found, as their verdict indicates, that John Jones was perfectly aware of the nature and effect of the deeds, and of what he was doing, at the time of their execution, and that no such general mental derangement was shown by the witnesses as to shift the burden of proof as to mental soundness or unsoundness from the plaintiff to the defendants. We do not think that any such confidential relation existed between John Jones and Morgan Jones, at the time of the execution of the deed, as to compel us to hold, under the authorities cited by the appellant's counsel, that the burden of proof in respect to the validity of the deeds was upon the defendant Morgan Jones, nor that any such evidence of undue influence in procuring the execution of the deeds was put before the jury as to require the justice before whom the cause was tried to charge them that the burden of proof had shifted, and that, in order to sustain the deeds, it was necessary for the defendants to show that John Jones was not of such infirm intellect as not to understand the nature and character of the transaction. If we are right in this conclusion, under the submission of the question as to the capacity of John Jones to execute the deeds, the verdict of the jury was right, and should be sustained, and the case might be rested upon the validity of the deeds alone.

The learned counsel for the appellant took exception to the charge of the justice in respect to the mental capacity necessary to be possessed by a testator for the purpose of executing a will, and he further claims that the learned justice was in error because he did not discriminate between the mental capacity needed to support a gift of land or a deed, without adequate consideration, and a will or testamentary disposition. In charging the jury the justice said: "There is a rule of law I shall give you to aid you in determining this case. Every man is presumed to be sane. He is presumed to have a disposing mind, and, in order to recover in this action, the plaintiff must show to you by a fair preponderance of evidence that John Jones did not have a disposing mind at the time of the execution of these papers. If John Jones had such a disposing mind at that time,—at the time of the execution of the deeds, and at the time of the execution of the will,—and you shall find the will was valid, then the defendants' rights stand upon two grounds, both upon the deeds and upon the will. If the evidence before you, however, is of even balance as to whether he had a disposing mind, then your verdict must be for the defendant. If the plaintiff, however, has shown to you by a fair preponderance of evidence that John Jones did not have a disposing mind at the time of the execution of the deeds and the will, then the plaintiff is entitled to your verdict." And in a previous part of his charge he said: "You will determine whether, in April, 1882, John Jones had this disposing mind, so he was able to make a will of his property, because his will transferred all his property to Morgan Jones. If you shall find that he was able to make a will of his property,—if he did have that disposing mind,—then the defendant must prove another fact, before he can rest his title solely upon that will. He must prove that the will was validly executed. The rule of law is that, when a will is executed, the testator must state that that is his will, and he must request the witnesses to sign the will as subscribing witnesses." The appellant's counsel contends that, as to the will, the burden of proof was at all times upon the defendants, and that the learned justice did not sufficiently draw the attention of the jury to that fact. It was determined in the case of *Delafield* v. *Parish*, 25 N. Y. 1, that the person propounding an alleged testamentary paper must prove, not only the execution and publication of the instrument, but also the mental capacity of the testator; so that if, upon consider-

ation of the evidence on both sides, the court is not satisfied that the supposed testator was of sound and disposing mind and memory, probate must be denied; but it was also held that at common law, and under our statutes, the legal presumption is that every man is *compos mentis;* and the burden of proof that he is *non compos mentis* rests on the party who alleges that an unnatural condition of mind existed in the testator. He who sets up the fact that the testator was *non compos mentis* must prove it. It was further held that in law the only standard as to mental capacity in all who are not idiots or lunatics is found in the fact whether the testator was *compos mentis or non compos mentis,* as those terms are used in their fixed legal meaning; and, such being the rule, the question in every case is, had the testator, as *compos mentis,* capacity to make a will? not, had he the capacity to make the will produced? If *compos mentis,* he can make any will, however complicated; if *non compos mentis,* he can make no will, not the simplest. It seems to us that in this case the defendant satisfied every rule laid down in the *Parish Will Case.* They produced the will, which was properly attested, and proved by the subscribing witnesses that it was executed by the testator. They also gave evidence which showed or tended to show that the testator fully comprehended the nature of the instrument, and was satisfied with its contents. This fully satisfied the rule laid down in *Delafield* v. *Parish, supra,* and the burden of proof rested upon the plaintiff to show that the testator was *non compos mentis* at the time of the execution of the instrument. Several exceptions were taken during the trial to the rulings of the court in respect to the admission or rejection of evidence, which we have examined, but do not think that any error was committed by the court in respect thereto. Finally, we are of opinion upon the whole case that it was fairly tried, and fairly submitted to the jury; and, the jury having determined the questions submitted to them in the defendants' favor, we think that the judgment entered upon the verdict ought not to be disturbed. Judgment affirmed, with costs and disbursements to the respondents. All concur.